UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EMMANUEL ORDING and
MICHELLE STEWART,
Husband and Wife,
    Plaintiffs,


    V.                               CIVIL ACTION NO.
                                         10-10670-MBB

BAC HOME LOANS SERVICING, LP,
    Defendant.


**MEMORANDUM AND ORDER RE:
DEFENDANT BAC HOME LOANS'
MOTION TO DISMISS
<u>(DOCKET ENTRY # 10)</u>**

**January 10, 2010**

**BOWLER, U.S.M.J.**

Pending before this court is a motion filed by defendant BAC Home Loans Servicing, LP ("defendant") to dismiss Count I and Count II of the complaint. (Docket Entry # 10). Plaintiffs Emmanuel Ording and Michelle Stewart ("plaintiffs"), husband and wife, oppose dismissal of the counts. (Docket Entry # 13). On August 17, 2010, this court held a hearing and took the motion (Docket Entry # 10) under advisement.


<u>PROCEDURAL HISTORY</u>

The two count complaint sets out the following claims against defendant: (1) a violation of the Truth in Lending Act, under 15 U.S.C. § 1641 ("section 1641" or "TILA") for failure to

disclose required information (Count I); and (2) a violation of Massachusetts General Law chapter 93A, section nine ("chapter 93A") (Count II). (Docket Entry # 1). The motion seeks to dismiss both counts. (Docket Entry # 10).

Defendant argues that Count I is subject to dismissal because defendant is not a "creditor" under the statute and also that the claim is now moot. (Docket Entry # 11). Count II, defendant contends, is subject to dismissal because of the inadequacy of the TILA claim and because the federal Home Affordable Modification Program ("HAMP") does not provide a private right to recovery. Defendant additionally argues that recovery pursuant to chapter 93A would be incompatible with the objectives and enforcement mechanisms of HAMP. (Docket Entry # 11).

Plaintiffs submit that the complaint provides sufficient facts to demonstrate a viable TILA violation and a proper chapter 93A claim. (Docket Entry # 13). According to plaintiffs, the complaint adequately demonstrates that defendant is liable under TILA as either a creditor or an assignee of creditor. (Docket Entry # 13). Plaintiffs also contend that defendant is liable under chapter 93A for employing unfair or deceptive practices in violation of provisions set forth in TILA and HAMP. (Docket Entry # 13).

The standard of review for a Rule 12(b)(6) motion is well established.  To survive a motion to dismiss, the complaint must include factual allegations that when taken as true demonstrate a plausible claim for relief even if actual proof of the facts is improbable.  Bell Atlantic v. Twombly, 550 U.S. 544, 555-558 (2007).  While "not equivalent to a probability requirement, the plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully."  Boroian v. Mueller, 616 F.3d 60, 65 (1st Cir. 2010) (internal quotation marks omitted).

"[A]ccepting as true all well-pleaded facts in the complaint and making all reasonable inferences in the plaintiff's favor," Id. at 64, the "factual allegations 'must be enough to raise a right to relief above the speculative level.'"  Gorelik v. Costin, 605 F.3d 118, 121 (1st Cir. 2010).  In considering the merits of a motion to dismiss, the court is limited in its review to the "facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint, and matters of which judicial notice can be taken."  Nollet v. Justices of the Trial Court of Mass., 83 F.Supp.2d 204, 208 (D.Mass. 2000).  In certain circumstances a court may also "consider 'documents the authenticity of which are not disputed by the parties'" as well as "'documents central to the plaintiffs' claim'" and "'documents sufficiently referred to in

3

the complaint.'" Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007). "Drawing reasonable inferences in plaintiffs' favor but eschewing reliance on "'bald assertions, . . . unsubstantiated conclusions,'" Fantini v. Salem State College, 557 F.3d 22, 26 (1st Cir. 2009), and legal conclusions, see Dixon v. Shamrock Financial Corp., 522 F.3d 76, 79 (1st Cir. 2008) (rejecting "'unsupported conclusions or interpretations of law'" in reviewing Rule 12(b)(6) dismissal), the complaint sets out the following facts.

## FACTUAL BACKGROUND

Defendant, a subsidiary of Bank of America Corporation, N.A., is the mortgage servicer of two mortgages encumbering plaintiff's primary residence (the "mortgages"). (Docket Entry # 1). On October 26, 2009, plaintiffs sent a TILA request to defendant seeking the identity of the owner of the two mortgages. (Docket Entry # 1, Ex. A). Plaintiffs sought disclosure of this information in order to "pursue loan-modification and loss-mitigation assistance." (Docket Entry # 1). Defendant did not respond to the TILA request. (Docket Entry # 1). Without a response from defendant, plaintiffs were unable to explore loan modification and loss mitigation assistance. (Docket Entry # 1).

In the ordinary course of business, defendant regularly extended or offered to extend consumer credit. (Docket Entry #

1).  Defendant services the mortgages on plaintiffs' primary
residence.  (Docket Entry # 1).  Defendant services mortgages, in
accordance with a mortgage servicing contract (the "servicing
contract"), on behalf of the Federal National Mortgage
Association ("Fannie Mae").  (Docket Entry # 1).

Under the terms of the servicing contract, defendant
"collects mortgage payments, sends monthly billing statements,
manages homeowners' accounts, and conducts collection and
foreclosure activity."  (Docket Entry # 1).  In accordance with
the servicing contract, defendant follows the loan servicing
instructions supplied by Fannie Mae.  (Docket entry # 1).  As the
servicer of plaintiffs' mortgages, defendant knew which companies
owned the mortgages.  (Docket Entry # 1).

HAMP, a "foreclosure-prevention program," was created in
order to assist homeowners and minimize foreclosures through
modification of the terms of a mortgage.  (Docket Entry # 1).
HAMP provides a series of loan servicing instructions including
"supplemental directives."  (Docket Entry # 1).  Fannie Mae
incorporates these supplemental directives by reference into the
terms of the servicing contract, thus binding defendant to follow
them.  (Docket Entry # 1).

On November 2, 2009, plaintiffs submitted an application
package to defendant in order to be considered for a loan
modification.  (Docket Entry # 1).  The application package was

sent to "Bank of America, Office of the President." (Docket Entry # 1). Defendant failed to provide written acknowledgment of the application package within ten business days in accordance with supplemental directive 09-07. (Docket Entry # 1, Ex. B). Additionally, defendant, as servicer of the mortgages, failed to provide a written response to plaintiffs regarding the application for a loan modification within 30 days as required under supplemental directive 09-07. (Docket Entry # 1).

On March 10, 2010, plaintiffs sent defendant a chapter 93A demand letter which defendant received on March 15, 2010. (Docket Entry # 1, Ex. C & D). Defendant failed to respond to the letter within 30 days and to date has failed to respond. (Docket Entry # 1). Due to the lack of response from defendant, plaintiffs filed the present suit. On July 1, 2010, in conjunction with the motion to dismiss, defendant disclosed to plaintiffs the entities that own the mortgages pursuant to the plaintiffs' TILA request. (Docket Entry # 13, Ex. 4).


DISCUSSION

I.  <u>TILA Violation</u>

Defendant argues that Count I is subject to Rule 12(b)(6) dismissal because only creditors may be held liable for TILA violations. (Docket Entry # 11). Defendant suggests it is merely the servicer of the mortgages and as such does not meet

TILA's statutory definition of "creditor" or "assignee of creditor." (Docket Entry # 11). Additionally, defendant argues that Count I fails because the claim is now moot, as defendant has disclosed the necessary information to plaintiffs. (Docket Entry # 11).

"TILA requires creditors to disclose, clearly and accurately, all the material terms of consumer credit transactions." McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 421 (1st Cir. 2007). Among the numerous disclosures required under TILA "the servicer" of a mortgage, upon written request, "shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation." 15 U.S.C. § 1641(f). Section 1641(f) does not specify a period for compliance with this obligation. Id. Thus, the requested information must be disclosed within a reasonable time. See 12 C.F.R. § 226.36(c)(1)(iii).

While it is the servicer of the loan that has the obligation to provide the information to the borrower pursuant to section 1641(f), liability for violations of TILA rests squarely and solely with creditors. Horton v. Country Mortg. Services, Inc., 2010 WL 55902, *3 (N.D.Ill. Jan. 4, 2010). "TILA expressly disclaims any liability for mere servicers 'unless the servicer is or was the owner of the obligation.'" Id. (quoting 15 U.S.C. § 1641(f)(1)). "Moreover, a servicer is not to be treated as an

assignee for purposes of liability under TILA 'on the basis of an assignment of [an] obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation.'" <u>Id.</u> (quoting 15 U.S.C. § 1641(f)(2)).

To be a creditor under TILA one must meet the requirements of a two prong test: (1) one must regularly extend consumer credit "which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required;" and (2) the creditor must be "the person to whom the debt arising from the consumer credit transaction is initially payable." <u>Harris v. Option One Mortg. Corp.</u>, 261 F.R.D. 98, 105 (D.S.C. 2009); <u>accord</u> <u>Roach v. Option One Mortg. Corp.</u>, 598 F.Supp.2d 741, 749 (E.D.Va. 2009).

Plaintiffs suggest that defendant meets the TILA definition of creditor because, as defendant's eventual disclosure[1] reveals, the owner of one of the loans was Bank of America Corporation, N.A. ("BOA" or "creditor"). In the complaint plaintiffs allege that defendant is a subsidiary of BOA. (Docket Entry # 1). Plaintiffs, in their reply brief opposing dismissal, assert that through several intermediary business entities BOA holds the sole

---

[1] Defendant did not respond to plaintiff's TILA information request until it attached a letter providing the requested information as an exhibit to its memorandum in support of its motion to dismiss filed on July, 01, 2010. (Docket Entry # 11, Ex. 4).

interest in defendant.  (Docket Entry # 13).  Therefore,
plaintiffs argue, BOA's status as creditor should be imputed to
defendant.  (Docket Entry # 13).

Plaintiffs' argument fails for at least two reasons.  As an
initial matter, plaintiffs have not properly plead that BOA owned
either of their mortgages.  (Docket Entry # 1).  It is true that
the letter in response to plaintiffs' TILA information request
(the "TILA response") was attached by defendant to its memorandum
in support of dismissal.  (Docket Entry # 11, Ex. 4).  That
document, however, while perhaps appropriate for consideration on
a motion for summary judgment is not properly part of the record
appropriate for consideration for purposes of this motion to
dismiss.

"'Ordinarily, the Court may not consider documents outside
of the Complaint or not expressly incorporated therein, unless
the motion is converted into one for summary judgment.'"
Velazquez Arroyo v. MCS Life Ins. Co., 418 F.Supp.2d 11, 14
(D.Puerto Rico 2006) (quoting Alternative Energy, Inc. v. St.
Paul Fire and Marine Ins. Co., 142 F.Supp.2d 126, 130 (1st Cir.
2001).  In a narrow set of circumstances, however, an exception
to this general rule may be made "for documents the authenticity
of which are not disputed by the parties; for official public
records; for documents central to plaintiffs' claim; or for
documents sufficiently referred to in the complaint."  Id.

9

The TILA response fails to satisfy any of these narrowly construed exceptions. The TILA response was not referred to in the complaint, it is not an official public record and, as will be discussed further, it is not central to plaintiffs' claim.[2] Finally, while the authenticity of the TILA response does not appear to be disputed, this court is not persuaded that it should consider a document that has not otherwise been properly made part of the record for purposes of this motion, absent a reason to do so, simply because it is accepted as authentic by the parties. Therefore, consideration of the TILA response is inappropriate.

Even if this court were to consider the TILA response and conclude that BOA owned one of plaintiffs' mortgages, plaintiffs' TILA claim still fails. Firstly, not only would BOA's position as owner of the note need to be accepted as true, but plaintiffs' unsupported contention that BOA is the sole interest holder in defendant would need to be accepted as true. In addition, this court would need to go further in order to arrive at a dispositive conclusion and pierce not one, but a multitude of corporate veils and determine that defendant and creditor were

---

[2] It is not central to plaintiffs' claim because even if this court were to consider the TILA response and accept as true BOA's ownership of one of the mortgages, this fact is insufficient for Count I to survive dismissal.

not legally separate entities.[3]

Plaintiffs fail to sufficiently allege BOA's ownership of either of their mortgages, and while plaintiffs sufficiently plead that a parent subsidiary relationship exists between BOA and defendant (Docket Entry # 1) they fail to plead facts that make plausible the notion that defendant and creditor should be treated as one and the same. Based on the facts properly in the record and appropriate for consideration for the purposes of this motion to dismiss the only inference that can reasonably be made is that defendant is the servicer of plaintiffs' mortgages. Pursuant to TILA only creditors may be held liable for TILA violations. Thus, Count I seeking relief from defendant for violating TILA is subject to dismissal.

While no longer relevant, this court briefly addresses the

---

[3] "The First Circuit has repeatedly stated that the separate corporate identities of a parent and subsidiary are entitled to recognition as long as the two corporations observe corporate formalities." PayPhone LLC v. Brooks Fiber Communications of Rhode Island, 126 F.Supp.2d 175, 181 (D.R.I. 2001) (citations omitted). "The factors used," to determine if corporate formalities were adhered to, "are whether the two corporations: (1) were separately incorporated, (2) had separate boards of directors, (3) kept separate accounting and tax records, and (4) had separate facilities and operating personnel." Id. The record is devoid of any factual allegations regarding these factors save for plaintiffs' admission in their reply brief that the business entities in question were separately incorporated in a number of different states. (Docket Entry # 13). Far from supporting their suggestion of identity, this fact weighs in favor of finding the existence of legally distinct businesses. Therefore, even if this court were inclined to pursue plaintiffs' argument, plaintiffs' claim as alleged in Count I still fails.

argument made by defendant that the claim is now moot.  When the
specific relief sought by the plaintiff is no longer available,
the claim is moot.  Carrington v. Commonwealth, 918 N.E.2d 788,
789 (Mass. 2009).  "It is the general rule that courts decide
only actual controversies."  Metros v. Secretary of the
Commonwealth, 484 N.E.2d 1015, 1018 (Mass. 1985).  An exception
to this rule applies when "the issue is 'capable of repetition,
yet evading review.'"  Id.; see also Southern Pac. Terminal Co. v.
Interstate Commerce Comm'n, 219 U.S. 498, 515 (1911).

Count I states that defendant violated TILA by failing to
disclose the identity of the owners of plaintiffs' mortgages.
(Docket Entry # 1).  Disclosure of that information, however, is
not the remedy sought by plaintiffs.  (Docket Entry # 1).
Plaintiffs seek damages for injuries caused by defendant's
failure to disclose the requested information.  Those injuries,
while possibly mitigated by defendant's eventual disclosure, were
not cured by it.  Thus defendant's argument that the claim is
moot fails.

II.  Chapter 93A Claim

Count II alleges that defendant, by its violations of TILA
and HAMP, engaged in unfair or deceptive business practices in
violation of chapter 93A.  (Docket Entry # 1).  In pertinent
part, Count II contends that:  (1) defendant violated TILA "by
failing to respond to Plaintiffs' request on October 26, 2009 for

12

the identity of the owner of their mortgage obligation," (Docket Entry # 1); (2) defendant first violated HAMP by failing to provide plaintiffs with written acknowledgment within ten days that it received the application for loan modification in accordance with supplemental directive 09-07 (Docket Entry # 1) and further violated HAMP by failing to provide a written response to the loan application package within 30 calendar days as required by supplemental directive 09-07 (Docket Entry # 1); and (3) that the violation of those statutory requirements contravened chapter 93A's prohibition against unfair or deceptive business practices.

Defendant argues that the chapter 93A claim cannot succeed based on a violation of TILA because defendant as a servicer is not liable for the underlying TILA claim as described in Count I. (Docket Entry # 11). Moreover, defendant contends that Count II cannot succeed under HAMP because HAMP does not allow for a private right of action and additionally a recovery under chapter 93A is incompatible with the objectives and enforcement mechanisms of HAMP. (Docket Entry # 11).

A. TILA

Chapter 93A protects against "unfair or deceptive acts or practices in the conduct of any trade or commerce." Acting in accordance with authority granted in chapter 93A, section 2(c), the Massachusetts Attorney General enacted 940 Massachusetts Code

Regulation 3.16 ("regulation 3.16"), which states: "The attorney
general may make rules and regulations interpreting the
provisions of subsection 2(a) of this chapter [referring to
chapter 93A]."  940 M.C.R. § 3.16.  Pursuant to regulation 3.16
an act or practice is a violation of Chapter 93A, section 2 if:

> (1) It is oppressive or otherwise unconscionable in any
> respect; or
>
> (2) Any person or other legal entity subject to this act
> fails to disclose to a buyer or prospective buyer any fact,
> the disclosure of which may have influenced the buyer or
> prospective buyer not to enter into the transaction; or
>
> (3) It fails to comply with existing statutes, rules,
> regulations or laws, meant for the protection of the
> public's health, safety, or welfare promulgated by the
> Commonwealth or any political subdivision thereof intended
> to provide the consumers of this Commonwealth protection; or
>
> (4) It violates the Federal Trade Commission Act, the
> Federal Consumer Credit Protection Act or *other Federal
> consumer protection statutes* within the purview of [Mass.]
> G.L. c. 93A, § 2.

In re Pharmaceutical Industry Average Wholesale Price Litigation,
491 F.Supp.2d 20, 82-83 (D.Mass. 2007); (citing 940 M.C.R. 3.16)
(emphasis added).

While, as a general rule courts have been hesitant to find
that, pursuant to regulation 3.16, a violation of a federal
statute is per se a violation of chapter 93A, violations of TILA
are among the exceptions to the rule.  Barnes v. Fleet Nat. Bank,
N.A., 370 F.3d 164, 176 (1st Cir. 2004) ("[v]iolations of TILA .
. . constitute "unfair and deceptive acts or practices" for

purposes of [chapter] 93A . . . and [regulation] 3.16(4)").
Defendants suggest, however, that even if it failed to comply
with its TILA obligations, that failure cannot be the basis for a
chapter 93A claim because TILA does not provide a remedy against
defendant as servicer of the loan.  As discussed supra,
defendants suggestion that there is no liability for servicers
under TILA is true.  <u>Horton</u>, 2010 WL 55902 at 3.  While
dispositive with regard to Count I, that axiom does not shield
defendant with regard to Count II.

Even where a statute does not provide for a private remedy,
chapter 93A "is the appropriate avenue through which the
[plaintiff] may seek a remedy for the violation" thereof.  <u>J.E.
Pierce Apothecary, Inc. v. Harvard Pilgrim Health Care, Inc.</u>, 365
F.Supp.2d 119, 142 (D.Mass. 2005); <u>see</u> <u>Whitehall Co. Ltd. v.
Merrimack Valley Distrib. Co.</u>, 780 N.E.2d 479, 483 (Mass.App.Ct.
2002) ("violation of a specific statute that does not itself
permit private recovery may give rise to a private claim under
[chapter] 93A").  Where a statute does not provide a private
means of recovery, for a cause of action pursuant to chapter 93A
to proceed, the violation must be determined to be unfair or
deceptive in and of itself and additionally it must be shown that
"recovery under [chapter] 93A is compatible with the objectives
and enforcement mechanisms of the underlying statute."  <u>Id.</u> at
143 ("must show that the statutory violation also violates

Chapter 93A . . . or that the Defendants' behavior was in itself an unfair method of competition"); see Flood v. Midland Nat'l Life Ins. Co., 643 N.E.2d 439, 183-184 (Mass. 1994) (not every act that violates policy violates chapter 93A).

An inquiry into the inherent unfairness of defendant's TILA violation, however, is not required.  As noted before, violations of TILA are per se unfair or deceptive in violation of chapter 93A and recovery thereunder is deemed compatible with the objectives of TILA.  Barnes, 370 F.3d at 176.  As also previously noted, a private right of action under a statute is not a prerequisite for raising a chapter 93A claim for a violation thereof.  J.E. Pierce Apothecary, 365 F.Supp.2d at 142 (noting that, even if no private right of action under statute chapter 93A claim may still be cognizable); Whitehall, 780 N.E.2d at 483 ("violation of a specific statute that does not itself permit private recovery may give rise to a private claim under [chapter 93A] if the violation amounts to . . . an unfair or deceptive practice").

Therefore, violations of TILA give rise to a claim under 93A ipso facto and regardless of plaintiffs' inability to seek relief for the TILA violation under the terms of that statute. Plaintiffs have adequately plead a chapter 93A claim against defendant based on the underlying TILA violation.  Thus, Count II couched in terms of the TILA violation survives dismissal.

B.  HAMP

Defendant argues that Count II warrants dismissal inasmuch
as the chapter 93A claim is based on defendant's violation of
HAMP.  Defendant suggests that HAMP does not provide a private
cause of action under which borrowers may sue servicers.  (Docket
Entry #11).  This is true.  <u>Durmic v. J.P. Morgan Chase Bank,
N.A.</u>, 2010 WL 4825632, *2 n. 9 (D.Mass. Nov. 24, 2010) ("HAMP
explicitly precludes any private right of action); <u>McKensi v.
Bank of America, N.A.</u>, 2010 WL 3781841, *5-6 (D.Mass. Sept. 22,
2010) (finding no expressed, implied or third party beneficiary
private right of action for HAMP violations); <u>Marks v. Bank of
America, N.A.</u>, 2010 WL 2572988, *6 (D.Ariz. June 22, 2010) ("The
lack of any express authorization, in addition to the exclusive
compliance authority delegated to Freddie Mac, demonstrates that
Congress did not intend to create a private cause of action");
<u>accord</u> <u>Zoher v. Chase Home Financing</u>, 2010 WL 4064798, *3
(S.D.Fla. Oct. 15, 2010).  As discussed previously, the lack of a
private cause of action under HAMP, however, does not
automatically dispose of the chapter 93A claim.

As explained by the Massachusetts Appeals Court in
<u>Whitehall</u>:

    Violation of a specific statute that does not itself permit
    private recovery may give rise to a private claim under
    [chapter] 93A if the violation amounts to an unfair method
    of competition or an unfair or deceptive practice
    independently prohibited by [chapter] 93A, § 2, and if
    recovery under [chapter] 93A is compatible with the

17

objectives and enforcement mechanisms the underlying statute
contains.

Whitehall, 780 N.E.2d at 483.  Therefore, the inquiry here is
threefold:  (1) have plaintiffs adequately plead that defendant
violated HAMP; (2) are those violations of the type that would be
independently actionable conduct under chapter 93A even absent
the violation of a statutory provision (i.e. are the violations
unfair or deceptive); and (3) if the conduct is actionable, is
recovery pursuant to chapter 93A compatible with the "objectives
and enforcement mechanisms" of HAMP?  See generally Id.  With
regard to the threshold issue, however, plaintiffs complaint
fails.  Defendant argues that plaintiffs failed to adequately set
forth facts alleging that defendant was even subject to HAMP
guidelines, and therefore cannot have adequately plead
defendant's violation of HAMP.  (Docket Entry # 11).

As stated by defendant in its brief in support of dismissal:
"[a]ll servicers of loans that are owned or guaranteed by Fannie
Mae or Freddie Mac ("GSE loans") must participate in the HAMP
program as to those loans."  (Docket Entry # 11).  Defendant
correctly points out that "plaintiffs never allege that Fannie
Mae is the owner of either of their mortgage notes," and that
"the complaint alleges that plaintiffs were," in fact, "unable to
acquire the name of the current owner of their mortgage notes."
(Docket Entry # 11).  Plaintiffs do allege that defendant is
bound by the requirements of HAMP as it is generally a servicer

of Fannie Mae backed mortgages.  (docket Entry # 1).  Defendant, however, is only bound by HAMP supplemental directives when it is specifically servicing a Fannie Mae owned or backed mortgage.[4] (Docket Entry # 11, Ex. 3 P. 1).  Plaintiffs fail to allege in the complaint that either of the mortgages were owned by Fannie Mae.

As noted before, defendant did attach the TILA response to its memorandum in support of its motion to dismiss.  (Docket Entry # 11, Ex. 4).  The TILA response reveals Fannie Mae to be the owner of one of the loans (loan # 14987133).  (Docket Entry # 11, Ex. 4).  To be sure, any failure to plead Fannie Mae's ownership of plaintiffs' mortgage was likely a result of defendant's failure to satisfy its disclosure requirements under TILA in a timely manner.  While the TILA response indicates that Fannie Mae is the owner of one of the mortgages (Docket Entry # 11, Ex. 4), that document is not properly part of the record

---

[4] A servicer servicing mortgages not backed by Fannie Mae or Freddie Mac may participate in the HAMP program with regard to those mortgages by entering into a "servicer participation agreement . . . with Fannie Mae in its capacity as financial agent of the United States."  (Docket Entry # 11, Ex. 3, ¶ 1). Plaintiffs fail to allege the existence of any such agreement. The complaint states only that "[d]efendant has a mortgage-servicing contract (the "Servicing Contract") with [Fannie Mae] under which it services mortgages on *behalf* of Fannie Mae." (Docket Entry # 1) (emphasis added).  The allegation then is that defendant is bound by HAMP only to the extent that it is servicing a Fannie Mae mortgage.  As noted, plaintiffs fail to allege that Fannie Mae owned either mortgage, and thus fail to plead the applicability of HAMP.

appropriate for consideration here.  The fact that defendant
attached the TILA response to its memorandum in support of its
motion to dismiss does not cure the shortcomings of the
complaint.

While plaintiffs allege that HAMP is applicable to
defendant, the allegation as stated is conclusory and need not be
credited here.  <u>See</u> <u>Ashcroft v. Iqbal</u>, _ U.S. _ , 129 S.Ct. 1937,
1949 (2009) ("[t]hreadbare recitals of the legal elements,
supported by mere conclusory statements, do not suffice to state
a cause of action"); <u>accord</u> <u>Maldonado v. Fontanes</u>, 568 F.3d 263,
268 (1st Cir. 2009).  Said another way, on the face of the
complaint and the exhibits attached thereto it is merely *possible*
that defendant was bound by the requirements of HAMP.  Plaintiffs
fail to provide additional facts, namely that Fannie Mae owned
one or both of the mortgages or that BOA had entered into a
servicer participation agreement with regard to non-Fannie Mae
backed loans, that would make that bald assertion *plausible* and
thus sufficiently plead.  Therefore, Count II is dismissed with
regard to the HAMP violation for failure to plead facts
demonstrating that statutes applicability.


CONCLUSION

In accordance with the foregoing discussion, defendant's
motion to dismiss (Docket Entry # 10) is **ALLOWED** as to Count I

and **ALLOWED** in part and **DENIED** in part as to Count II.  In the
event discovery uncovers sufficient facts to remedy the
shortcomings of plaintiffs' pleading described in the foregoing,
or if plaintiffs currently possesses such facts, plaintiffs may
seek leave to amend the complaint.


                                    /s/ Marianne B. Bowler
                              **MARIANNE B. BOWLER**
                              United States Magistrate Judge